# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TDC LENDING LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PRIVATE CAPITAL GROUP, INC., et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:17-cv-00188<br><br>Judge Robert J. Shelby |

Plaintiff TDC Lending LLC filed a Complaint against multiple defendants after discovering a loan to an NFL player was lost as a result of identity theft. The Individual Defendants—Jared Lucero, James Brett Boren, Michael Burke, Jed Robinson, Eric Enloe, Parker Enloe, Justin Griffin, Kellen Jones, and Michael Pedersen—jointly filed a Motion for Judgment on the Pleadings,[1] asking the court for judgment on the claims asserted against them. TDC alleges securities control liability against all Individual Defendants and direct liability for securities fraud against Jared Lucero, James Brett Boren, Michael Burke, Jed Robinson, Eric Enloe and Parker Enloe (the PCG Defendants). For the reasons explained below, Defendants' Motion is granted.

---

[1] Dkt. 56.

## BACKGROUND[2]

This case stems from a loan that Defendant Private Capital Group, Inc. sought to arrange for Buffalo Bills professional football player Marcel Dareus. Private Capital first became involved in the loan in early July 2012, when Eli Tenenbaum contacted Private Capital and told the company he wanted to solicit a loan for Dareus, who was his client.[3] Parker Enloe, a shareholder and director of Private Capital, then contacted TDC's principal, Todd Davison, to solicit TDC's investment in the Dareus loan.[4] Parker Enloe represented that the borrower was Dareus and that Eric Enloe, another shareholder and director of Private Capital, had spoken with Dareus on the phone multiple times.[5] Over the course of several weeks in July 2012, Parker Enloe also told Davison that Private Capital intended to participate in the Dareus loan as a lender, that it could seek verification of Dareus' employment status from the Buffalo Bills but that Dareus did not want Private Capital "talking detail with the Bills," that the loan had collateral from Dareus' football contract, and that TDC would have "100% control on decisions."[6] Parker Enloe then sent Davison a loan summary sheet stating the borrower was Dareus, the collateral would be Dareus's personal assets—including his upcoming signing bonus of $2.9 million—the amount of the loan would be $1,500,000, and the loan would be secured by an "All Assets Agreement" and a financing statement.[7] TDC alleges all nine Individual

---

[2] These facts are taken from the Second Amended Complaint's well-pleaded allegations, which the court must accept as true for purposes of this Motion. *See Aspenwood Inv. Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004).

[3] Dkt. 35, ¶ 32.

[4] *Id.* ¶¶ 6, 33.

[5] *Id.* ¶¶ 5, 34.

[6] *Id.* ¶¶ 34–36.

[7] *Id.* ¶ 37.

Defendants participated in drafting or formulating the loan summary sheet, approved the document, or supervised others who formulated or approved it.[8] The PCG Defendants[9] told TDC the Dareus loan was set to fund on or about July 25, 2012 and would be due and payable in full on September 15, 2012.[10]

TDC wired its funds to Private Capital on July 27, 2012.[11] That same day, a person purporting to be Dareus signed a promissory note for the loan and had the note notarized in Georgia even though Dareus was supposed to be at training camp in New York on that date.[12] The PCG Defendants disbursed the funds on July 30 to a person purporting to be Dareus.[13]

In August 2012, the Buffalo Bills told Eric Enloe that Dareus was not the borrower and that he had been the victim of identity theft.[14] The PCG Defendants then hired a private firm to investigate the possibility the funds had been disbursed to someone other than Dareus.[15] The investigators concluded, among other things, that the Dareus bank account statements provided by Tenenbaum as part of the loan application process were not certified by the bank or properly verified by Private Capital; the address for Dareus on the driver license Tenenbaum provided was different from the address on the bank account statements; the loss of TDC's funds "may have

---

[8] *Id.* ¶ 188.

[9] The Second Amended Complaint makes several allegations against "the PCG Defendants," which TDC defines as Private Capital and Jared Lucero, James Brett Boren, Michael Burke, Jed Robinson, Eric Enloe, and Parker Enloe. *Id.* at 1. For the purposes of this Motion, the court will use the term "PCG Defendants" to refer only to Lucero, Boren, Burke, Robinson, and Eric and Parker Enloe.

[10] *Id.* ¶ 39.

[11] *Id.* ¶ 95.

[12] *Id.* ¶¶ 96–97.

[13] *Id.* ¶ 110.

[14] *Id.* ¶ 141.

[15] *Id.* ¶ 143.

been averted" by prior communication with the Buffalo Bills; and the loan application "was indeed fraudulent."[16]

In its Second Amended Complaint, TDC alleges the PCG Defendants violated Section 10(b) of the Securities Exchange Act and Rule 10b-5, as well as the Utah Uniform Securities Act. TDC also alleges all nine Individual Defendants were "control persons" for purposes of establishing liability under Section 20(a) of the Securities Exchange Act and analogous provision of the Utah Uniform Securities Act. TDC asserts against Parker Enloe additional claims for fraud, negligent misrepresentation, promissory estoppel, and fraudulent concealment, as well as a separate claim under the Utah Uniform Securities Act. Finally, TDC alleges the Individual Defendants committed civil conspiracy.

## LEGAL STANDARD

The court views a motion for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6).[17] To survive a motion for judgment on the pleadings, the complaint must allege "enough facts to state a claim to relief that is plausible on its face," and any "[f]actual allegations must be enough to raise a right to relief above the speculative level."[18]

When alleging fraud, a plaintiff must "state with particularity the circumstances constituting fraud or mistake."[19] This requires a plaintiff to "set forth the who, what, when, where and how of the alleged fraud" and describe "the time, place, and contents of the false

---

[16] *Id.* ¶ 144.

[17] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

[18] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[19] Fed. R. Civ. P. 9(b).

4

representation, the identity of the party making the false statements and the consequences thereof."[20]

A plaintiff claiming a violation of Section 10(b) must further allege the defendant acted with scienter, which the Tenth Circuit defines as "intent to defraud or recklessness."[21] Recklessness is "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."[22]

A plaintiff alleging securities fraud must also meet the rigorous pleading requirements of the Private Securities Litigation Reform Act (PSLRA). The complaint must "specify each statement alleged to have been misleading" as well as "the reason or reasons why the statement is misleading."[23] The plaintiff must also meet a "more stringent rule for pleading scienter" by stating "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[24] An inference of scienter is "strong" under the PSLRA if it is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."[25]

---

[20] *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (citations omitted).

[21] *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003).

[22] *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1232 (10th Cir. 1996) (citation omitted).

[23] 15 U.S.C. § 78u–4(b)(1).

[24] *Adams*, 340 F.3d at 1095–96 (quoting 15 U.S.C. § 78u–4(b)(2)).

[25] *Tellabs,* 551 U.S. at 314.

## ANALYSIS

TDC's claims of securities fraud under Sections 10(b) and 20(a) provide the only bases for federal jurisdiction in this case. For that reason, the court will address those claims first.

**I.     Section 10(b)**

The PCG Defendants argue the Second Amended Complaint does not adequately plead a Section 10(b) claim. A claim for securities fraud under Section 10(b) has five elements:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities;[26] (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.[27]

Only the first and third elements are contested at this point—the PCG Defendants argue the Second Amended Complaint does not allege with particularity that each of them made false or misleading statements or that they did so with scienter. The court takes up each argument in turn.

**A.  False or Misleading Statements**

In its Second Amended Complaint, TDC alleges the PCG Defendants were all responsible for the loan summary sheet, which TDC alleges misrepresented or omitted the following facts: (1) Private Capital had no underwriting guidelines for the Dareus loan; (2) Private Capital had not independently verified the identity of the Dareus loan borrower; (3) Private Capital had not properly secured the Dareus loan; (4) Private Capital had not independently verified that transactional documents had been signed by Dareus; (5) the PCG

---

[26] The parties do not dispute that the Dareus loan constituted a security. *See* 15 U.S.C. § 77b(a)(1) (defining "security" as including investment contracts).

[27] *Adams*, 340 F.3d at 1095.

Defendants had doubts about the authenticity of the transactional documents before closing; (6) no one employed by Private Capital ever met Dareus before closing; (7) Private Capital did not intend to participate in the Dareus loan; (8) Private Capital would receive more than $180,000 for its services related to the Dareus loan; (9) the amount of the Dareus loan would be less than $1,500,000; (10) TDC's investment in the Dareus loan would represent 67% of the principal amount; and (11) Parker Enloe had previously pleaded guilty to conspiracy to commit mail, wire, and bank fraud.[28]

The majority of these are allegations of factual omissions during the course of dealings, rather than affirmative misrepresentations. When a securities fraud claim is based on omission of a material fact, "the plaintiff must show that the defendant had a duty to disclose the omitted information."[29] Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information."[30] Rather, "a duty to disclose arises only where both the statement made is material, and the omitted fact is material to the statement in that it alters the meaning of the statement."[31]

TDC has not pointed to any instance in the loan summary sheet in which a statement the PCG Defendants made was rendered misleading by an alleged omission. For example, the alleged omission that Private Capital had no underwriting guidelines for the Dareus loan is not actionable unless TDC alleges that fact "is material to [an affirmative] statement in that it alters the meaning of the statement," and TDC does not point to any affirmative statement about

---

[28] Dkt. 35, ¶ 175.

[29] *Employees' Ret. Sys. of Rhode Island v. Williams Cos., Inc.*, 889 F.3d 1153, 1162 (10th Cir. 2018).

[30] *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).

[31] *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002) (citation omitted).

underwriting.[32] Because TDC has not alleged the PCG Defendants had a duty to disclose any of the alleged omissions, those allegations cannot support an actionable securities fraud claim.

TDC also alleges the PCG Defendants made affirmative statements that were false or misleading. For example, TDC alleges the loan summary sheet stated the amount of the Dareus loan would be $1,500,000 and that TDC's investment would represent 67% of the principal amount.[33] TDC alleges these statements were false because the loan was for $1,267,436 and TDC's investment was almost 79% of the total loan.[34] TDC further alleges the PCG Defendants' statements that the loan was for Dareus and would be backed by his collateral were false because the recipient of the loan was actually someone falsely claiming to be Dareus.[35] TDC also alleges Parker Enloe made further misrepresentations by stating that Eric Enloe had spoken with Dareus and that Private Capital would participate in the loan as a lender.[36]

Even assuming these representations constitute false or misleading material statements of fact, TDC has not adequately alleged the PCG Defendants made them with an intent to deceive or recklessness as required for Section 10(b) claims. This is fatal to TDC's securities claims, as explained below.

**B. Scienter**

The PCG Defendants argue TDC failed to adequately allege scienter because the Second Amended Complaint does not detail each Defendants' participation in creating the loan summary sheet, but instead relies on the theory of "group pleading," which allows plaintiffs to impute

---

[32] *Id.*

[33] Dkt. 35, ¶ 37.

[34] *Id.* ¶¶ 59–60.

[35] *Id.* ¶ 177.

[36] *Id.* ¶ 177.

8

company statements to individuals within the company.[37] The PCG Defendants argue that group pleading is insufficient under the PSLRA.

Neither the Supreme Court nor the Tenth Circuit has decided whether the group pleading theory survives the heightened pleading standard of the PSLRA. However, at least one district court in the Tenth Circuit has rejected the doctrine, stating that "the PSLRA's particularity requirement appears to foreclose plaintiffs from pleading that facts about the defendants, as a group, are sufficient to give rise to a strong inference of scienter."[38] A judge in this District recently cited this language favorably when addressing claims of scienter as to individual defendants.[39] These courts reached this conclusion after analyzing both the text and purpose of the PSLRA.

The text of the PSLRA itself "heightened the pleading requirements for securities fraud cases generally, and particularly in regard to the scienter element."[40] The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind."[41] The singular "defendant" seemingly requires a plaintiff to make individualized allegations. Otherwise, the liability of defendants would "depend on whether they were all sued in a single action or were each sued alone in several separate actions" — a conclusion the Fifth Circuit called "inconceivable."[42] Where the judicially created doctrine of group pleading conflicts with the clear text of the statute, the text must control, since the

---

[37] *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997).

[38] *In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1199 (D.N.M. 2010).

[39] *Jun Zhang v. LifeVantage Corp.*, No. 2:16-CV-965 TS, 2017 WL 2599883, at *10 (D. Utah June 15, 2017).

[40] *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1259 (10th Cir. 2001).

[41] 15 U.S.C. § 78u-4 (emphasis added).

[42] *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).

9

court's task "is to be faithful to what Congress intended without creating a host of new judge-made rules that become a labyrinth of pitfalls for securities-action plaintiffs."[43]

The conclusion that the PSLRA precludes group pleading also comports with Congress' widely recognized intent in enacting the PSLRA. Congress enacted the PSLRA "to restrict abuses in securities class-action litigation, including . . . the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability."[44] The heightened scienter standard thus helps distinguish between those in a corporation who acted with scienter and those who did not. Group pleading, in contrast, allows a plaintiff to group defendants together without distinguishing the bases for each defendant's culpability. This is incompatible with the purpose of the PSLRA, which is "to eliminate complaints that do not clearly show scienter."[45] This goal is accomplished by requiring that "a plaintiff, to proceed beyond the pleading stage, must allege facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations."[46] Thus, the court concludes group pleading is no longer sufficient to allege scienter for securities fraud.

The Second Amended Complaint alleges all Individual Defendants knew or recklessly disregarded the falsity of the statements in the loan summary sheet because they participated in drafting, formulating or approving it or supervised employees who did. This is the only

---

[43] *In re Thornburg*, 695 F. Supp. 2d at 1199; s*ee also Southland Sec. Corp.*, 365 F.3d at 365 ("While the PSLRA does not explicitly abolish the [group pleading] doctrine, it was not necessary to do so because Congress never made this judicial creation law to begin with.").

[44] *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 531 (3d Cir. 1999).

[45] *In re Thornburg*, 695 F. Supp. 2d at 1199.

[46] *Phillips v. Scientific–Atlanta, Inc.,* 374 F.3d 1015, 1018 (11th Cir. 2004).

allegation of scienter as to Lucero, Boren, Burke, Robinson, Griffin, Kellen, and Pederson.[47]
This allegation is insufficient under the PSLRA's heightened standard because it does not allege facts about each Defendant's scienter.

The court nevertheless observes that even if group pleading was sufficient under the PSLRA, TDC has failed to allege facts giving rise to a strong inference of scienter. TDC argues a strong inference of scienter in this case rests on allegations that (1) the PCG Defendants knew of or recklessly disregarded red flags about the identity of the borrower; (2) the statements about the amount and percentage of TDC's investment later turned out to be false; and (3) the PCG Defendants had financial motives to defraud TDC. For the reasons explained below, these allegations are insufficient.

*1. Red flags*

TDC argues the PCG Defendants acted with scienter because their roles in a small company necessarily support the conclusion each PCG Defendant was presented with information that should have raised red flags about the true identity of the borrower.

A defendant's role within the company may be a relevant fact when alleging scienter, but it is insufficient on its own.[48] In any case, the alleged red flags are insufficient to create a strong inference that the PCG Defendants made false statements with the intent to deceive or recklessness.

A plaintiff may raise an inference of recklessness by alleging "the defendant was *aware of*, but failed to investigate, certain 'red flags' that plainly indicated misconduct was afoot."[49] In

---

[47] The Second Amended Complaint contains additional allegations of scienter for Parker Enloe and Eric Enloe. Those are discussed below.

[48] *In re Zagg, Inc. Secs. Litig.*, 797 F.3d 1194, 1205 (10th Cir. 2015).

[49] *Sanchez v. Crocs, Inc.*, 667 F. App'x 710, 720 (10th Cir. 2016) (emphasis in original).

order to do so, a plaintiff must specifically identify the facts a defendant had access to that contained red flags.[50]

Even if a plaintiff identifies red flags and establishes the defendants had access to facts about them, the court must still weigh competing inferences. For example, in *Anderson v. Spirit Aerosystems Holdings, Inc.*, the plaintiffs alleged the defendant airline was so far behind schedule and over budget on three projects "that a loss would be inevitable."[51] The plaintiffs in that case alleged the airline's executives knew of these problems but ignored "economic realities," which led to a large drop in stock price.[52] The Tenth Circuit assumed the truth of those allegations but rejected the conclusion that "fail[ure] to give adequate weight to financial red flags" was evidence of scienter.[53] The more likely explanation, the Court stated, was that the defendants "were overly optimistic."[54] And even if the defendants had missed warning signs, the Court noted "the plaintiffs supply little reason to suspect malevolence rather than benign optimism."[55]

In this case, TDC alleges the PCG Defendants missed several red flags: (1) Tenenbaum never provided the PCG Defendants with evidence of his authority to act on Dareus' behalf; (2) the credit report authorization Tenenbaum provided was so irregular that the PCG Defendants asked that it be re-signed; (3) Private Capital was told Dareus did not want them to contact the Buffalo Bills; (4) Private Capital did not receive Dareus' income or employment verification from the Bills; (5) Private Capital learned the birthdate it had been given for Dareus was wrong;

---

[50] *Id.* at 721.
[51] 827 F.3d 1229, 1237 (10th Cir. 2016).
[52] *Id.* at 1238.
[53] *Id.*
[54] *Id.*
[55] *Id.*

(6) the promissory note was signed and notarized in Georgia on a date when Private Capital knew Dareus was supposed to be at training camp in New York; and (7) Parker Enloe and Eric Enloe had concerns about the transaction and wanted the borrower to re-sign the promissory note.[56]

But TDC's own allegations belie an inference of recklessness or intent to deceive. First, TDC affirmatively alleges several instances in which Private Capital attempted to verify Dareus' identity: (1) Tenenbaum sent Private Capital what it believed to be a copy of Dareus' driver license, Social Security number, and contract with the Buffalo Bills; (2) Private Capital ran a credit check on Dareus, which revealed accounts in his name at Capstar Bank; (3) Tenenbaum sent Private Capital copies of Dareus' bank statements; (4) Private Capital contacted a person claiming to be an employee of Capstar, who stated he had personally met Dareus; (5) the purported Capstar employee participated in a conference call in which Private Capital employees discussed structuring the Dareus loan and later sent Private Capital a letter confirming Dareus would have sufficient collateral for the loan in the form of a bonus from the Buffalo Bills; and (6) Tenenbaum provided Private Capital with contact information for a person Private Capital believed to be Dareus and for a person purporting to work in the human resources department of the Buffalo Bills.[57] These allegations more likely support an inference that the PCG Defendants were misled than that they acted with recklessness.

TDC's allegations concerning Private Capital's requests to re-sign documents similarly fails to create a strong inference of scienter. TDC alleges Tenenbaum seemingly complied with Private Capital's request to have Dareus sign the credit report authorization and stated the reason

---

[56] Dkt. 35, ¶¶ 61–110.

[57] *Id.* ¶¶ 54, 85.

Tenenbaum signed them in the first place was because athletes "freak out" about signing such documents.[58] And TDC presents only conclusory allegations that Parker Enloe and Eric Enloe wanted Dareus to re-sign the promissory note before closing. TDC's only factual basis for this allegation is that Eric Enloe stated on August 30, 2012—a month after closing—that Private Capital had requested to get one of the documents re-signed.[59]

Other red flags, such as the allegation that the date on which a person purporting to be Dareus signed the promissory note conflicted with the dates of his training camp, may have been warning signs that the PCG Defendants missed. But considering all the allegations in the Second Amended Complaint together, the court cannot conclude the PCG Defendants were reckless in missing these red flags. The more compelling inference is that the PCG Defendants failed to give sufficient weight to the red flags but that they believed they had adequately confirmed Dareus' identity. Thus, these red flags do not raise a strong inference of scienter.

### 2. Statements about TDC's investment

TDC alleges the PCG Defendants falsely represented the loan would be for $1,500,000 and that TDC's investment would represent 67% of the total.[60] The Second Amended Complaint alleges these statements were false because the numbers later turned out to be different, but TDC does not allege the PCG Defendants knew or recklessly disregarded that the statements were false at the time they were made.

A claim of securities fraud cannot be based on "fraud by hindsight," in which plaintiffs allege "defendants should have anticipated future events and made certain disclosures earlier

---

[58] *Id.* ¶¶ 66–67.

[59] *Id.* ¶ 81.

[60] *Id.* ¶¶ 59–60.

14

than they actually did."[61] Such allegations fail to establish scienter because "often there is no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation."[62] Thus, an allegation that "the alleged misrepresentation conflicts with the current state of facts" is insufficient to show the statement was false when made.[63]

TDC does not allege any facts showing the PCG Defendants—at the time they created the loan summary sheet—knew or recklessly disregarded that the loan amount would be less than $1,500,000 or that TDC's share of the investment would be more than 67%. Thus, a later change to these numbers does not support an actionable inference of scienter.

*3. Motive*

TDC also argues the court should draw an inference of scienter from the PCG Defendants' motives. TDC alleges the PCG Defendants stood to personally gain from the loan because Private Capital made $180,000 from the loan, which is evidence of a financial motive.

Allegations of motive may be part of "the mix of information" that can lead to a finding of scienter, but they are "typically not sufficient in themselves to establish a strong inference of scienter."[64] "[P]ersonal financial gain may weigh heavily" in an analysis of scienter.[65] However, "generalized motives shared by all companies and which are not specifically and uniquely related to [the defendants] in particular, are unavailing."[66] A motive to protect one's

---

[61] *See Fleming*, 264 F.3d at 1260.

[62] *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir. 1997) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

[63] *Id.*

[64] *Fleming*, 264 F.3d at 1262–63.

[65] *Tellabs,* 551 U.S. at 325.

[66] *Fleming*, 264 F.3d at 1269.

position in a company or increase one's compensation is insufficient because those motives are "shared by all company executives."[67]

Here, TDC has alleged only that the PCG Defendants had motives to make money from the loan. But TDC has not alleged how each Defendant would benefit from the $180,000 the company stood to earn or how that compensation differs from a general motive to increase compensation. Thus, these allegations are insufficient under the PSLRA.

In any case, TDC alleges only that Private Capital's conduct presented a danger of misleading investors. But the Second Amended Complaint does not address the first factor in proving recklessness, i.e., that the conduct "is an extreme departure from the standards of ordinary care."[68] The Second Amended Complaint thus does not adequately allege the PCG Defendants acted recklessly.

The court concludes TDC has failed to adequately allege the PCG Defendants made false or misleading statements with scienter. Thus, the Section 10(b) claim fails as to the Individual Defendants.

## II. Section 20(a)

The Second Amended Complaint alleges the Individual Defendants all acted as "controlling persons" of Private Capital and are therefore liable under Section 20(a).[69] Under Section 20(a), "a person who controls a party that commits a violation of the securities laws may be held jointly and severally liable with the primary violator."[70] In other words, a plaintiff must

---

[67] *Id.*

[68] *Anixter*, 77 F.3d at 1232.

[69] Dkt. 35, ¶ 188.

[70] *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304–05 (10th Cir. 1998) (citing 15 U.S.C. § 78t(a)).

16

establish "(1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person."[71]

Applying that standard here, TDC's control person liability theory first requires a showing that Private Capital committed a primary violation of the securities laws. But TDC's only alleged basis for Private Capital's liability stems from its allegations against the PCG Defendants. Because the court concludes TDC has not adequately alleged the PCG Defendants violated Section 10(b), any claim that the corporation was a primary violator of Section 10(b) necessarily also fails.[72] Thus, because TDC has not alleged a primary violation of securities laws, it cannot show that the Individual Defendants are liable as controllers of a primary violator. Accordingly, the Second Amended Complaint does not plausibly allege Section 20(a) liability.

### III.     State-law claims

The securities fraud claims under Sections 10(b) and 20(a) provided the only bases for federal jurisdiction in this case. The remaining claims against the Individual Defendants are properly in federal court only as a result of the court's supplemental jurisdiction, which supplies federal courts with jurisdiction over state-law claims that share "a common nucleus of operative fact" with the federal claims.[73] But the exercise of supplemental jurisdiction is discretionary, and "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[74] Because the securities fraud claims are dismissed, the court declines to exercise jurisdiction over the remaining claims.

---

[71] *Id.* at 1305.

[72] *See Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994) ("Since a corporation is only a legal entity, it cannot act or have a mental state by itself. It can only act through its officers and employees . . . .") (citation omitted).

[73] *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004).

[74] *Smith v. City of Enid by & Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

**CONCLUSION**

The Motion for Judgment on the Pleadings is GRANTED.[75] The result of this ruling leaves TDC with three options: (1) seek leave to amend, (2) seek Rule 54(b) certification, or (3) pursue its remaining claims in state court.

Under the first option, if TDC wishes to file an amended complaint with new allegations as to scienter, it may seek leave to do so within 21 days of this Order and in accordance with Local Rule of Civil Procedure 15-1.

Alternatively, if TDC believes it is unable to plead stronger factual allegations in a Third Amended Complaint, it may file a Rule 54(b) motion within 21 days asking the court to certify this Order as final.[76]

Finally, TDC may opt to pursue its remaining claims in state court. Under the current state of the pleadings, the securities claims against the PCG Defendants fail. Because a corporation can only be liable through the acts of its individual officers or directors, the securities claim against Private Capital necessarily also fails. Private Capital filed a Motion for Summary Judgment[77] on the securities claim against the corporation. The court's ruling on the Motion for Judgment on the Pleadings effectively grants the relief that Private Capital seeks and thus renders the Motion for Summary Judgment moot. If TDC does not file a motion for leave to amend or a motion for 54(b) certification within 21 days, the court will deny Private Capital's Motion for Summary Judgment as moot. And because no federal claims will remain, the court

---

[75] Dkt. 56.

[76] A motion for Rule 54(b) certification must show (1) the judgment is final and (2) there is no just cause for delay. *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988).

[77] Dkt. 51.

will decline to exercise supplemental jurisdiction and will dismiss the remaining state law claims without prejudice for TDC to pursue them in state court.

**SO ORDERED** this 13th day of September, 2018.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge